# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 22-cr-00495 |
| Plaintiff, | |
| -vs- | JUDGE PAMELA A. BARKER |
| CHADWICK LYNN MILLER, | |
| Defendant. | MEMORANDUM OPINION & ORDER |

Before the Court is the United States of America's ("the Government") Motion for Court Ordered Psychotropic Medication filed on October 27, 2023.  (Doc. No. 33.)  On November 22, 2023, Defendant Chadwick L. Miller ("Miller") filed a Response in Opposition (Doc. No. 37.), to which the Government replied on November 30, 2023.  (Doc. No. 41.)  The Court permitted Miller to file a sur-reply, which he did on December 5, 2023.  (Doc. Nos. 42, 44.)

The Court conducted a two-day hearing pursuant to *Sell v. United States*, 539 U.S. 166, 171 (2003), that began on December 12, 2023.  (*See* Minutes of Proceedings dated December 12 and 13, 2023.)  At the conclusion of the hearing, the Court ordered Pretrial Services and Probation to file a Modified Presentence Investigation report ("Modified PSR") and the Government and Miller to file post-hearing briefs, which all parties timely filed by their respective deadlines.  (See Doc. Nos. 52, 53, 54.)

For the following reasons, the Court DENIES the Government's Motion.

## I.     Background

On June 30, 2022, the Government filed a Criminal Complaint, which led to Miller's arrest on July 6, 2022.  (Doc. No. 1; Docket Entry dated July 6, 2022.)  Miller has been in federal custody

since that date. On July 28, 2022, the Court ordered a competency exam of Miller under 18 U.S.C. §§ 4241 and 4247. (Doc. No. 5.)

While the exam was pending, on August 25, 2022, a grand jury returned a two-count indictment charging Miller with (1) Influencing, Impeding, or Retaliating Against a Federal Law Enforcement Officer by Threats or Injury in violation of 18 U.S.C. § 115(a)(1)(B) and (2) Interstate Communications with a Threat to Injure in violation of 18 U.S.C. § 875(c). (Doc. No. 6.)

Once the competency exam was completed, Miller's defense counsel moved the Court to hold a competency hearing. (Doc. No. 10.) On September 28, 2022, the Court held the hearing and concluded that Miller was not competent to stand trial. (Doc. No. 11.) The Court therefore ordered Miller to the Attorney General's custody for four months to determine if he could regain competency. (*Id*.) Notwithstanding the Court's order, the Government did not send Miller to the Federal Medical Center in Devens, Massachusetts until May 18, 2023, nearly eight months later. (Doc. No. 24-1.)

On October 27, 2023, the Government filed a Motion for Court Ordered Psychotropic Medication of Miller. (Doc. No. 33.) On November 22, 2023, Miller filed a Response in Opposition. (Doc. No. 37.) The Government filed its Reply on November 30, 2023. (Doc. No. 41.) And, on December 5, 2023, Miller filed a Sur-Reply. (Doc. No. 44.) The *Sell* hearing began on December 12, 2023, and concluded on December 13, 2023. (*See* Doc. Nos. 46, 50.) On January 5, 2024, pursuant to the Court's order, Probation and Pretrial Services filed a Modified PSR. (Doc. No. 52.) Finally, on January 25, 2024, the Government and Miller filed post-hearing briefs. (Doc. Nos. 53, 54.)

As of the date of this Memorandum Opinion and Order, Miller has been in federal custody for 18 months and 20 days.

## II.      The Offenses

At the *Sell* hearing, the alleged victim of Miller's offenses, FBI Special Agent Jacob Kunkle, testified.  (Doc. No. 46.)  He explained that he first met Miller in 2010.  (*Id*. at PageID# 317.)  In January of that year, SA Kunkle was the duty officer when Miller walked into his office to make a complaint.  (*Id*.)  Miller said that he was being "terrorized" by people who were encouraging him to kill himself because they "planted an electronic device in his brain."  (*Id*.)  During the following twelve years, Miller occasionally texted SA Kunkle's duty phone with reports that "people were impersonating other people."  (*Id*.)

In 2022, Miller's texts turned threatening.  (*Id*. at PageID# 320.)  Around May 2022, SA Kunkle testified that Miller texted him, "You're a dead man."  (*Id*.)  From that point, SA Kunkle stated that he received daily text and video messages from Miller.  (*Id*.)  He estimated that he received close to one thousand messages from May 2022 until June 2022, though not all of them were threatening.  (*Id*. at PageID# 321.)  In fact, SA Kunkle testified that "the majority did not have to do with him" and only the "minority" contained threats.  (*Id*. at PageID# 339.)  As far as SA Kunkle was aware, Miller never took any steps to carry out his threats.  (*Id*. at PageID# 340.)  Even so, the threats made SA Kunkle concerned for himself and those around Miller.  (*Id*. at PageID# 322.)

At the hearing, the parties agreed that Miller's offenses carry a statutory maximum of ten years imprisonment.  (Doc. No. 50, PageID# 538.)

## III.     Miller's Proposed Treatment

Miller has refused treatment.  (Doc. No. 36, PageID# 269.)  To restore Miller to competency, Kirit Patel, M.D., recommends first involuntarily treating Miller with low doses of short-acting

3

medications via intramuscular injections.[1]  (Doc. No. 29, PageID# 212.)  Specifically, he recommends initial trials with Haldol and Prolixin as they are both more effective and safer.  (*Id*. at PageID# 213.) If Miller's response to those drugs is inadequate, he then recommends trials of Abilify and Zyprexa. (*Id*.)  Abilify may be less effective, and Zyprexa can cause severe sedation and serious infections. (*Id*.)  Dr. Patel estimates Miller has a 70 to 75 percent chance of improvement with this treatment plan.  (*Id*.)  However, there is a chance of side effects.  (*Id*.)  Some, such as constipation, excessive salivation, and hypotension, are common.  (*Id*.)  Tardive Dyskinesia, which causes irregular muscle movements, is the most serious side effect and can be permanent.  (*Id*.)

At the *Sell* hearing, Miller's counsel extensively cross-examined Dr. Patel about these side effects.  (*See generally* Doc. No. 46, PageID# 411-58; Doc. No. 50, PageID# 491-98.)

If the Court were to order Miller's involuntary medication, it could take anywhere from "a few weeks" to "a few months" to determine if Miller responds to the treatment.  (Doc. No. 46, PageID# 384.)

## IV.    Miller's Guidelines Sentencing Range

The Modified PSR concludes that Miller's Guidelines sentencing range is 27 to 33 months. (Doc. No. 52, PageID# 556.)  This is based on a total offense level of 18 and criminal history category of I.  (*Id*.)  The PSR also identifies four potential grounds for departure, to include a downward departure for diminished capacity under U.S.S.G. § 5K2.13.  (*Id*. at PageID# 561.)  The probation officer did not apply an adjustment for acceptance of responsibility.  (*Id*. at PageID# 552.)

---

[1] Dean Cutillar, D.O., authored the treatment plan.  (Doc. No. 29, PageID# 214.)  Shortly after, he retired.  (Doc. No. 46, PageID# 407.)  Dr. Patel took over for him.  (*Id*.)  He adopted and agreed with Dr. Cutillar's treatment plan for Miller. (*Id*.)

4

The Government argues that Miller's Guidelines sentencing range is 33 to 41 months, based on a total offense level of 20 and a criminal history category of I.  (Doc. No. 53, PageID# 567.)  It disagrees with the probation officer's conclusion that Miller is a "Zero-Point Offender" because he did not make a "credible threat" of violence under U.S.S.G. § 4C1.1(a)(3).  (*Id.* at PageID# 565.)

Miller concurs with the Modified PSR's sentencing range.  (Doc. No. 54, PageID# 573.)

## V.    Law and Analysis

To involuntarily medicate Miller, the Government must prove each of the following four *Sell* factors by clear and convincing evidence:

> (1) the existence of an "important" governmental interest; (2) that involuntary medication will "significantly further" the government interest; (3) that involuntary medication is "necessary" to further those interests; and (4) that the administration of the drugs must be "medically appropriate" for the individual defendant.

*United States v. Green*, 532 F.3d 538, 545 (6th Cir. 2008) (citing *Sell*, 539 U.S. at 180-81).

For the following reasons, the Court concludes that the Government has failed to prove the first *Sell* factor: that an "important" governmental interest is at stake.

### A.    The Seriousness of the Charged Crime

For an "important" governmental interest to be at stake, the Government must have charged Miller with a "serious crime."  *United States v. Berry*, 911 F.3d 354, 360 (6th Cir. 2018) (citing *Sell*, 539 U.S. at 180).  Whether a crime is "serious" depends on the "maximum criminal penalty that may be imposed upon the defendant if he is convicted."  *Id.*  Here, Miller faces a statutory maximum of ten years imprisonment.

In *Berry*, the Sixth Circuit noted that "in many circuits the relevant cases have involved a ten-year statutory maximum."  911 F.3d at 361 (citing cases from the Fourth, Eighth, and Fifth Circuits).  While it did not so hold, the court suggested that a ten-year statutory maximum suffices as a "serious

crime." *Id.*; *see also United States v. Sturgill*, 2020 U.S. Dist. LEXIS 78881 at *5 (E.D. Ky. May 5, 2020) (concluding that "under Sixth Circuit precedent, a crime with a statutory maximum of ten years imprisonment can be considered a serious crime").

Therefore, the Court finds that Miller's crimes are "serious" for purposes of the first *Sell* factor.  But that does not end the analysis.  The Court must also consider certain "mitigating factors." *Id*. at 362.  For the reasons that follow, the Court finds that these mitigating circumstances outweigh the Government's interest in prosecuting Miller.

### B.      Mitigating Circumstances

*Berry* instructs that district courts consider the following mitigating factors: (1) the length of the defendant's pre-trial confinement; (2) the nature of the defendant's alleged crime; (3) the risk that the defendant will harm himself or others; and (4) the likelihood that the defendant will be civilly committed.  *Id*.  The Court concludes that three of these factors weigh against the Government's interest in prosecuting Miller, while one is neutral.

### 1.      The Length of Miller's Pretrial Confinement

For the first mitigating factor, the Court considers the length of Miller's pretrial confinement against his potential Guidelines sentencing range.  *Id*. at 362-63.  This is because "the overall governmental interest in prosecution is weakened" "[w]here a defendant has already served sufficient time that a guilty verdict will only result in a sentence of time served."  *Id*. at 363.

The parties dispute whether Miller qualifies as a Zero-Point Offender.  To be a Zero-Point Offender, Miller cannot have used "violence" or "credible threats of violence" in connection with his alleged offense.  U.S.S.G. § 4C1.1(a)(3).  The Guidelines do not define "credible" as it used under § 4C1.1(a)(3).  But the enhancement under U.S.S.G § 2D1.1(b)(2) likewise requires a "credible threat

6

to use violence."  In that context, the Sixth Circuit has held that the enhancement is applicable where "one who, with the intent to injure another, credibly communicates that intent, without acting on it— for example, when one credibly threatens to hit someone with a shovel, but has not yet swung the shovel."  *United States v. Pineda-Duarte*, 933 F.3d 519, 522 (6th Cir. 2019).  This example suggests that there must be some temporal and spatial proximity between the defendant, his threat, and his intended victim.  In other words, it is the fact that the defendant is holding a shovel while threatening to hit the other person with said shovel that makes the defendant's threat "credible."  Some of the cases the Sixth Circuit cites to in the appendix to *Pineda-Duarte* suggest the same.  *Id.* at 526; *see e.g., United States v. Overstreet*, 693 F. App'x 374, 375 (5th Cir. 2017) (credible threat of violence when defendant brandished a gun during drug transaction, accused person of attempting to rob him); *United States v. Torres*, 694 F. App'x 937, 942 (5th Cir. 2017) (credible threat of violence when defendant threatened drug debtor, held him at gunpoint); *United States v. Sykes*, 854 F.3d 457, 460-61 (8th Cir. 2017) (credible threat of violence when defendant, while in possession of a gun, stated he would find and shoot person who stole cocaine base from customer); *United States v. Bonilla*, 670 F. App'x 875, 876 (5th Cir. 2016) (credible threat of violence when defendant pointed gun at customer, threatened to harm her if she did not pay drug debt).

That is not the case here.  Miller threatened SA Kunkle over text and video messages, never in person.  (Doc. No. 46, PageID# 321.)  Nor is there any evidence that Miller was ever near SA Kunkle when he sent any of his threatening messages.  While SA Kunkle testified that Miller had "the means to travel," there is no evidence that he ever traveled to SA Kunkle's location when he sent a threatening message.  (*Id.* at PageID# 343.)  And while SA Kunkle referenced that Miller had the

"ability" to buy a gun, there is, again, no evidence that Miller ever attempted to do so.  (*Id*. at PageID# 324.)  In short, there is no evidence before the Court to suggest that Miller's threats were credible.

The Court notes as well that the probation officer that prepared the Modified PSR reviewed all the text and video messages that Miller sent to SA Kunkle.  (Doc. No. 52, PageID# 549.)  Of those, the probation officer identified only 14 messages—both text and video—that were "threatening."  (*Id*. at PageID# 549-50.)  During the *Sell* hearing, SA Kunkle testified to only half a dozen of the text messages.  And the Government did not play any of the video messages.  The probation officer's determination that Miller's threats were not "credible" is based upon a far more extensive record than the minimal evidence adduced at the hearing.

Accordingly, the Court agrees with the Modified PSR's sentencing range of 27 to 33 months.

As noted above, Miller has been in federal custody for nearly 19 months.  Miller's counsel estimates that restoring Miller to competency, transporting him back to the Northern District of Ohio, arraigning him, holding a jury trial, preparing a full presentence investigation interview and report, and holding a sentencing hearing would take "seven to nine months."  (Doc. No. 54, PageID# 575.)  As such, by the time of his sentencing, Miller will have been imprisoned for 27 to 29 months, within the Guidelines sentencing range.  The Court finds this timeline credible.  And it notes that this does not consider the possibility of Miller pleading guilty and receiving an adjustment for acceptance of responsibility.  (*See id*. at PageID# 575.)  In that scenario, his Guidelines range would be 18 to 24 months, the minimum of which he has already served.

In sum, the fact that it is highly unlikely that Miller will receive additional time in prison "significantly undercuts the government's interest in prosecuting him."  *Berry*, 911 F.3d at 363.  But

this is just one mitigating factor and does not "eliminate" the Government's interest. *Id.* (citing *Sell*, 539 U.S. at 186.) The Court will therefore consider the remaining factors.

### 2. The Non-Violent Nature of Miller's Charged Crimes

The next factor is the nature of the defendant's alleged crime. In *Berry*, the defendant left a briefcase he made to look like a bomb outside a bank in Detroit. *Id.* at 357. The briefcase did not actually contain any explosives, just various documents, some with Berry's name. *Id.* at 357-58. Berry was charged with a violation of 18 U.S.C. § 1038(a)(1)(A) for, effectively, making a false bomb threat. *Id.* at 364. The court concluded that "[a]lthough it may be alleged that Berry intended to cause fear, it cannot be said that the crime was violent as alleged in the indictment. Neither death nor serious bodily injury resulted from Berry's alleged actions. In fact, there was no physical injury at all." *Id.*

Miller's alleged crime is of a similar nature. As explained above, his threats were only ever over text and video message. He never threatened SA Kunkle in person. And Miller never took any steps towards carrying out his threats. Nor did Miller physically injure SA Kunkle or anyone else. Thus, the non-violent nature of Miller's alleged crime further weighs against the Government's interest in prosecuting him.

### 3. The Risk that Miller Will Harm Himself or Others

Under the third factor, the Court considers the risk that Miller will harm himself or others if he is not medicated. *Id.* at 364. Miller is currently not medicated. And the uncontested testimony at the *Sell* hearing was that Miller "has not been deemed . . . a danger to himself or others" and he has not "acted out in a violent nature." (Doc. No. 46, PageID# 372, 400; Doc. No. 50, PageID# 492-93.) So, this factor too weighs against the Government's interest.

#### 4. The Likelihood of Civil Commitment

The last factor is the likelihood of civil commitment under 18 U.S.C. § 4246.  Neither party has argued that there is (or is not) a possibility that Miller will be civilly committed.  "[W]hile the mere uncertain possibility of civil commitment is not enough, neither is there a requirement that the defendant must prove that civil commitment is a certainty."  *Berry*, 911 F.3d at 365 (citing *United States v. Grigsby*, 712 F.3d 964, 972 (6th Cir. 2013)).  This factor is neutral.

## VI. Conclusion

For the foregoing reasons, the mitigating circumstances unique to Miller's case outweigh the Government's interest in prosecuting him such that Miller's involuntary medication is inappropriate.  Because the Government has not met its burden to show the first *Sell* factor by clear and convincing evidence, the Court need not consider the remainder.  *Id.*  Accordingly, the Court DENIES the Government's Motion for Court Ordered Psychotropic Medication.  (Doc. No. 33.)  Further, the Court GRANTS Miller's unopposed request that the exhibits he presented during the *Sell* hearing, except Defense Exhibit H, be admitted into evidence.  (Doc. No. 54, PageID# 579.)  Miller is to be transported back to the Northern District of Ohio and released from custody.

**IT IS SO ORDERED.**

Dated: January 26, 2024                    _s/ Pamela A. Barker_____
                                                      PAMELA A. BARKER
                                                      UNITED STATES DISTRICT JUDGE